UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVENDRA KUMAR JAIN,

                              Plaintiff,

          -against-

DOUG TULINO, Postmaster General, United
States Postal Service Agency,

                              Defendant.

22-CV-2751 (JGLC)

**<u>OPINION AND ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

          Plaintiff Devendra Jain brings this action under Title VII of the Civil Rights Act of 1964

(Title VII), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967 (ADEA).

He claims that his employer, the United States Postal Service ("USPS"), discriminated against

him on the basis of his race, religion, and national origin. Plaintiff brings this action against

Defendant Doug Tulino ("Defendant"), the Postmaster General for the USPS Agency. Pending

before the Court is Defendant's motion for summary judgment against Plaintiff's claims. For the

reasons stated herein, Defendant's motion is GRANTED.

**FACTUAL BACKGROUND**

          Plaintiff, who is 71 years old and is of Indian descent, has worked at USPS since 1995. ¶¶

1–3.[1] In 2007, Plaintiff was promoted to Supervisor of Distribution Operation at the New York

Morgan Processing and Distribution Center. ¶ 5. In this role, Plaintiff supervised more than 20

employees. ¶ 6. In 2015, Plaintiff's managers became concerned that Plaintiff was submitting

fraudulent time records inflating the number of hours he worked, and they decided to investigate

Plaintiff. ¶¶ 8–9. Pending the completion of investigation and consistent with USPS policy,

---

[1] All paragraph references herein refer to the Statement of Undisputed Material Facts at
ECF No. 68 ("56.1 Statement") unless otherwise noted.

Plaintiff was placed on administrative leave with full pay. ¶ 10. The investigation concluded on February 19, 2016, with USPS submitting a fact-finding report to human resources which concluded that Plaintiff had submitted falsified time records. ¶ 11. Because the report substantiated human resources' concern that Plaintiff had committed fraud, USPS issued Plaintiff a Notice of Proposed Removal in May 2016. ¶ 13. Ultimately, Plaintiff negotiated and voluntarily entered into a settlement agreement, which included an agreement that Plaintiff would be demoted from a level 17 supervisor to a level 4 mail handler. ¶¶ 14–15, 113. Plaintiff also waived any back pay, excluding any night differential and leave he was entitled to. ¶ 17. In exchange, USPS rescinded the Notice of Proposed Removal and allowed Plaintiff to return from administrative leave. ¶ 16. The settlement agreement did not limit Plaintiff from applying to any future "craft or management positions." ¶ 19.

Since that time, however, Plaintiff has claimed to be the victim of countless incidents of discrimination and has accused more than 40 employees of engaging in retaliation. ECF No. 71 at 1. Given the number of complaints at issue in this case, the Court organizes the fact section to describe each incident of retaliation or discrimination Plaintiff alleges in his Second Amended Complaint, followed by what the undisputed evidence now shows. *See* ECF No. 36 ("SAC"). For the reasons stated in Section I.B., these undisputed facts are largely derived from Defendant's 56.1 Statement, which Plaintiff failed to properly refute.

## I.    Plaintiff's Job Promotion Applications and Denials

On September 3, 2016, Plaintiff began working as a mail handler at Ansonia Station. ¶ 20. Within three months of entering into the settlement agreement, Plaintiff applied for 33 job promotions. ¶ 118. When an applicant applies for a promotion at USPS, they do not have visibility into who serves on the promotion review committee unless a member of the committee

extends an offer to interview. ¶ 120. The members of the review committee would have been able to see that Plaintiff had been demoted from a level 17 role to a level 4 role. ¶ 121. Plaintiff received two interviews in connection with his applications but ultimately did not receive any of the promotions he applied for. ¶¶ 119, 125.

For ease of reference regarding these 33 job applications, the Court adopts the chart at ECF No. 71 at 11–15 ("Chart 1"). This chart sets forth the relevant job number, the individuals for whom there is evidence establishing that they reviewed Plaintiff's application, evidence that Plaintiff was eligible for the position,[2] and if the job reviewers were aware of Plaintiff's Equal Employment Opportunity ("EEO") complaint activity. Chart 1 corresponds with ¶¶ 126-225 of the 56.1 Statement, and Plaintiff does not dispute the contents of Chart 1. *See infra* at 27–29. Chart 1 is reproduced below.

---

[2] In Plaintiff's Counterstatement, with respect to several of the job applications, he disputes Defendant by referencing his own conclusory affidavit as evidence that he was eligible for the positions. *See, e.g.*, ECF No. 96 ("Counterstatement") ¶¶ 127, 130, 133, 139, 142. This is insufficient. *Fincher v. Depository Trust & Clearing Corp.*, No. 06-CV-9959 (WP), 2008 WL 4308126, at *3 (S.D.N.Y. Sep. 17, 2008) ("A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment."); *see also Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 152 (E.D.N.Y. 2010) ("[T]he mere existence of some alleged factual dispute between the parties alone will not defeat a properly supported motion for summary judgment. Indeed, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth concrete particulars showing that a trial is needed.") (cleaned up); *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025) (affirming that a non-movant's affidavit that fails to comply with Federal Rule of Civil Procedures 56(e) in that it is conclusory is "insufficient to defend against a motion for summary judgment").

| Job. No. | Individuals for Whom There Is Evidence Establishing That They Reviewed Plaintiff's Application | Evidence that Plaintiff Was Eligible for Position? | Were Job Reviewers Aware of Plaintiff's EEO Activity? |
|---|---|---|---|
| #1 (Ex. 2 at USPS000801) | None. | None. | N/A |
| #2 (Ex. 2 at USPS000805) | None. Plaintiff speculates without evidence that Charles Conti was a reviewer, *id.*, but Conti has denied that under oath. Ex. 8 at USPS001038. | None. Plaintiff noted portal said not eligible. Ex. 2 at USPS000807. | N/A |
| #3 (Ex. 2 at USPS000808) | None. | None. | N/A |
| #4 (Ex.2 at USPS000811) | None. | None. | N/A |
| #5 (Ex.2 at USPS000813) | None. | None. | N/A |
| #6 (Ex. 2 at USPS000816) | None. Plaintiff speculates without evidence that Julieta Trujillo and Frank Calabrese were reviewers, *id.*, but each has denied that under oath. Ex. 22 at USPS001160; Ex. 9 at USPS001042. | None. Plaintiff testified portal told him not eligible. Ex.2 at USPS000818. | N/A |
| #7 (Ex. 2 at USPS000819) | None. Plaintiff speculates without evidence that Kahlil Wilson was a reviewer, *id.*, but he has denied that under oath. Ex. 10 at USPS001049. | None. | N/A |
| #8 (Ex. 2 at USPS000822) | None. | None. | N/A |
| #9 (Ex. 2 at USPS000825) | Plaintiff speculates without evidence that Gerald Barletta and James Martin were reviewers, *id.* at USPS000826, but Barletta has denied that under oath, Ex. 12 at USPS001058, and there is no evidence as to James Martin. | None. | N/A |
| #10 (Ex. 2 at USPS000829) | None. | None. | N/A |
| #11 (Ex. 2 at USPS000832) | None. | None. | N/A |

| Job. No. | Individuals for Whom There Is Evidence Establishing That They Reviewed Plaintiff's Application | Evidence that Plaintiff Was Eligible for Position? | Were Job Reviewers Aware of Plaintiff's EEO Activity? |
|---|---|---|---|
| #12 (Ex. 2 at USPS000835) | None. Plaintiff speculates without evidence that Frank Calabrese was a reviewer, *id.*, but Calabrese has denied that under oath, Ex. 9 at USPS001042. | None. | N/A |
| #13 (Ex. 2 at USPS000838) | Bruno Diluca, Ex. 11 at USPS001053. Plaintiff speculates without evidence that Steven Humin was a reviewer, *id.*, but Humin has denied that under oath. Ex. 13 at USPS001062. | Not eligible. Ex. 11 at USPS001053. | Diluca lacked the knowledge to retaliate. Ex. 11 at USPS001053. |
| #14 (Ex. 2 at USPS000841) | None. Plaintiff speculates without evidence that Steven Humin was a reviewer, *id.*, but Humin has denied that under oath. Ex. 13 at USPS001062. | None. Plaintiff testified portal told him not eligible. Ex. 2 at USPS000843 | N/A |
| #15 (Ex. 2 at USPS000844) | None. Plaintiff speculates without evidence that Christina Warden and Steven Humin were reviewers, *id.* , but each has denied that under oath. Ex. 14 at USPS001068; Ex. 13 at USPS001062. | None. | N/A |
| #16 (Ex. 2 at USPS000847) | None. Plaintiff speculates without evidence that Edward A. Kerner, James Martin, and Gwendolyn Edwards were reviewers, *id.* , but Edwards has denied that under oath, Ex. 15 at USPS001073, and there is no evidence as to the others. | None. | N/A |
| #17 (Ex. 2 at USPS000850) | None. Plaintiff speculates without evidence that James Martin was a reviewer. *Id.* | None. | N/A |
| #18 (Ex.2 at USPS000853) | None. Plaintiff speculates without evidence that James Martin was a reviewer. *Id.* | None. | N/A |
| #19 (Ex. 2 at USPS000856) | None. Plaintiff speculates without evidence that Lilliam Rodriguez was a reviewer, *Id.*, but she has denied this under oath. Ex. 16 at USPS001078. | None. | N/A |
| #20 (Ex. 2 at USPS000859) | None. Plaintiff speculates without evidence that Xaviour Hernandez was a reviewer, *Id.* | None. | N/A |

| Job. No. | Individuals for Whom There Is Evidence Establishing That They Reviewed Plaintiff's Application | Evidence that Plaintiff Was Eligible for Position? | Were Job Reviewers Aware of Plaintiff's EEO Activity? |
|---|---|---|---|
| #21 (Ex. 2 at USPS000862) | Julieta Trujillo. Plaintiff speculates without evidence that Anthony Bologna, Donald Bucknor, and Frank Calabrese were reviewers, *id.*, but each has denied this under oath. Ex. 17 at USPS001083; Ex.18 at USPS001095; Ex. 9 at USPS1042. Trujillo did not recall Plaintiff's application. Ex. 22 at USPS001161. | None. Plaintiff testified portal told him not eligible. Ex. 2 at USPS000864 | Trujillo lacked knowledge to retaliate. Ex. 22 at USPS001160. |
| #22 (Ex. 2 at USPS000865) | Julieta Trujillo. Plaintiff speculates without evidence that Anthony Bologna, Donald Bucknor, and Frank Calabrese were reviewers, *id.*, but each has denied this under oath. Ex. 17 at USPS001084; Ex. 18 at USPS001096; Ex. 9 at USPS001043. Trujillo did not recall Plaintiff's application. Ex. 22 at USPS001162. | None. Plaintiff testified portal told him not eligible. Ex. 2 at USPS000867. | Trujillo lacked knowledge to retaliate. Ex. 22 at USPS001160. |
| #23 (Ex. 2 at USPS000868) | Donald Bucknor. Plaintiff speculates without evidence that Frank Calabrese was a reviewer, *id.*, but he has denied this under oath. Ex. 9 at USPS001044. | Not eligible. Ex. 18 at USPS001098. | Bucknor lacked knowledge to retaliate. Ex. 18 at USPS001095. |
| #24 (Ex. 2 at USPS000871) | Julieta Trujillo. Plaintiff speculates without evidence that Anthony Bologna, Donald Bucknor, and Frank Calabrese were reviewers, *id.*, but each has denied this under oath. Ex. 18 at USPS001099; Ex. 17 at USPS001086. Trujillo did not recall Plaintiff's application. Ex. 22 at USPS001163. | None. Plaintiff testified portal told him not eligible. Ex. 2 at USPS000873. | Trujillo lacked knowledge to retaliate. Ex. 22 at USPS001160. |
| #25 (Ex. 2 at USPS000874) | Donald Bucknor. Plaintiff speculates without evidence that Julieta Trujillo, Anthony Bologna, and Frank Calabrese were reviewers, *id.*, but each has denied this under oath. Ex. 22 at USPS001164; Ex. 17 at USPS001087; Ex. 9 at USPS001044. | Not eligible. Ex. 18 at USPS001100; Ex. 2 at USPS000876 | Bucknor lacked knowledge to retaliate. Ex. 18 at USPS001095. |
| #26 (Ex. 2 at USPS000877) | Donald Bucknor. Plaintiff speculates without evidence that Julieta Trujillo, Anthony Bologna, and Frank Calabrese were reviewers, *id.*, but Trujillo and Calabrese have denied this under oath. Ex. 22 at | Not eligible. Ex. 18 at USPS001102; Ex. 2 at USPS000879. | Bucknor lacked knowledge to retaliate. Ex. 18 at USPS001095. |

6

| Job. No. | Individuals for Whom There Is Evidence Establishing That They Reviewed Plaintiff's Application | Evidence that Plaintiff Was Eligible for Position? | Were Job Reviewers Aware of Plaintiff's EEO Activity? |
|---|---|---|---|
| | USPS001165; Ex 9 at USPS001045. There is no evidence as to Bologna. Ex. 17 at USPS001088. | | |
| #27 (Ex. 2 at USPS000889) | None. | None. | N/A |
| #28 (Ex. 2 at USPS000892) | None. Plaintiff speculates without evidence that Steven Humin was a reviewer, *id.*, but Humin has denied this under oath. Ex. 13 at USPS001063. | Plaintiff testified portal told him not eligible. Ex. 2 at USPS000893. | N/A |
| #29 (Ex.2 at USPS000894) | Donald Bucknor. Plaintiff speculates without evidence that Julieta Trujillo, Anthony Bologna, and Frank Calabrese were reviewers, *id.*, but Bologna and Calabrese have denied this under oath. Ex. 17 at USPS001089; Ex. 9 at USPS001045. There is no evidence as to Trujillo. Ex. 22 at USPS001166. | Not eligible. Ex. 18 at USPS001104; Ex. 2 at USPS000896. | Bucknor lacked knowledge to retaliate. Ex. 18 at USPS001095. |
| #30 (Ex. 2 at USPS000897) | None. | None. | N/A |
| #31 (Ex. 2 at USPS000900) | None. | None. | N/A |
| #32 (Ex. 2 at USPS000903) | None. | None. | N/A |
| #33 (Ex. 2 at USPS000906) | None. | None. | N/A |

## II.    Plaintiff's EEO Complaints

In 2016, 2018, 2019, and 2020, Plaintiff filed several EEO complaints. ¶ 21. Plaintiff

alleged that several USPS employees discriminated or retaliated against him based on his

religion, national origin, race, and his EEO activities. *See, e.g.*, SAC ¶¶ 46–48, 65, 86. For ease

of reference, the Court adopts the chart at ECF No. 71 at 5–8 ("Chart 2"), which details the

7

named adverse actor, their job title, the date they became aware of Plaintiff's alleged protected activity, and the claim associated with the allegations. The chart corresponds with Paragraphs 22–71, 74–79, 82–89, 92–109 of the 56.1 Statement. Plaintiff admits as true the contents of Chart 2. *See infra* at 27–29. Chart 2 is reproduced below.

| Name | Relevant Position(s) | Date When They Became Aware of Plaintiff's Alleged Protected Activity | Claim Nos. |
|---|---|---|---|
| Rafael Astacio | Manager, Distribution Operations (Ex. 21 at USPS001136) | July 2017. *Id.* at USPS001137. | 6, 9, 12, 15 & 18 |
| Irene Baker | Lead Senior Manager, Distribution Operations (Ex. 6 at USPS001003) | Around August 2012. *Id.* at USPS001004. | 3-4, 9, 11, & 18 |
| Gerald Barletta | Manager, Maintenance Operations (Ex. 12 at USPS001057) | Affidavit dated August 17, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001058. | 4 |
| Anthony Bologna | Manager, Distribution Operations (Ex. 17 at USPS001082) | Affidavit dated August 24 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001083. | 4 |
| Donald Bucknor | Senior Manager, Distribution Operations (Ex. 18 at USPS 001094) | Affidavit dated November 13, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001095. | 4 |
| Frank Calabrese | District Manager (Executive in Charge) (Ex. 9 at USPS001041) | Around 2006. *Id.* at USPS001042. | 4 |
| Beatrice Carty | Supervisor, Distribution Operations (Ex. 25 at USPS000359) | Affidavit dated September 21 2018, disclaims prior awareness of EEO activity. *Id.* at USPS000360. | 23 |
| Charles Conti | Manager, International Service Center (Ex. 8 at USPS001037) | Affidavit dated July 27, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001038. | 4 |
| Bruno Diluca | Manager, Transportation and Networks (Ex. 11 at USPS001052) | Affidavit dated August 18, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001053. | 4 |
| Vanessa Duncan-Smith | Manager, Human Resources (Ex. 5 at USPS000986) | March 2017. *Id.* at USPS000987. | 1-2, 4-5, 7,9, 11-12, 17-19, 21-22 |

| Name | Relevant Position(s) | Date When They Became Aware of Plaintiff's Alleged Protected Activity | Claim Nos. |
|---|---|---|---|
| Gwendolyn Edwards | Senior Manager, Distribution Operations (Ex. 15 at USPS001072) | Affidavit dated August 21, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001073. | 4 |
| Ruth Fuchu | Senior Manager, Distribution Operations. (Ex. 2 at USPS000923) | Affidavit dated August 30, 2019, disclaims prior awareness of EEO activity. Ex. 57 at USPS004537. | 6 & 18 |
| Sprunty Fulmore | Mail Handler, Ex. 52 at USPS001245. | No admissible evidence. | 12 & 21 |
| Denise Galletti | Manager, Customer Service (Ex. 20 at USPS001123) | Affidavit dated October 2, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001124. | 8, 17, 19, & 21-22 |
| Branly Garcia | Supervisor, Distribution Operations (Ex. 27 at USPS000371) | Affidavit dated September 25, 2018, disclaims prior awareness of EEO activity. *Id.* at USPS000372. | 12 & 14 |
| Rise Gist | Supervisor, Distribution Operations (Ex. 29 at USPS000385) | Affidavit dated September 17, 2018, disclaims prior awareness of EEO activity. *Id.* at USPS000386. | 23 |
| Richard Granigan | Lead Manager, Distribution Operations (Ex. 2 at USPS000909) | No admissible evidence. | 5, 6, & 22 |
| Xaviour Hernandez | Manager, Claims (International Unit) (Ex. 2 at USS000859) | No admissible evidence. | 4 & 17 |
| Berlinda Howard | Manager, Distribution Operations (Ex. 28 at USPS000379) | Affidavit dated September 26, 2018, disclaims prior awareness of EEO activity. *Id.* at USPS000380. | 15, 18, & 24 |
| Steven Humin | Manager, Network Distribution Center (Ex. 13 at USPS001061) | Affidavit dated August 22, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001062. | 4 |
| Edward Kerner | Plant Manager (Ex. 2 at USS000847) | No admissible evidence. | 4 |
| Steve Laird | Manager, Plant Support (Ex. 23 at USPS000341) | Around September 2017. *Id.* at USPS000342. | 20 |
| Lisa Lane | Supervisor (Ex. 2 at USPS000928) | No admissible evidence. | 6, 18 |

| Name | Relevant Position(s) | Date When They Became Aware of Plaintiff's Alleged Protected Activity | Claim Nos. |
|------|---------------------|----------------------------------------------------------------------|------------|
| Dennis Lawson | Supervisor, Distribution Operations (Ex. 36 at USS003800) | Affidavit dated October 19, 2019, disclaims prior awareness of EEO activity. Ex. 61 at USPS004555. | 18 & 28 |
| Wunna Lwin | Supervisor, Distribution Operations (Ex. 59 at USPS004550) | May 2018.  Ex 59 at USPS004450. | 25 |
| James Martin | In-Plant Support Manager (Ex. 2 at USPS000854) | No admissible evidence. | 4 |
| Stephanie Miles | No admissible evidence. | No admissible evidence. | 18 & 27 |
| Samantha Newmark | Supervisor, Distribution Operations (Ex 58 at USPS004546.) | An indeterminate point prior to August 25, 2019.  Ex 58 at USPS004547 | 25 |
| Lekiba Newton | Mail Handler (Ex. 33 at USPS003761) | End of 2019. *Id.* at USPS003762. | 15 |
| Myrna Phan | Supervisor, Distribution Operations (Ex. 56 at USPS004503) | Affidavit dated September 2, 2019, disclaims prior awareness of EEO activity. *Id.* at USPS004503. | 25 |
| Lilliam Rodriguez | Postmaster, Bronx (Ex. 16 at USPS001077) | Affidavit dated August 16, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001078. | 4 |
| Roger Sterling | Supervisor, Distribution Operations (Ex. 31 at USPS003728) | 2018 or 2017. *Id.* at USPS003729. | 15 & 26 |
| K. Thang | Regular Mail Handler (Ex. 2 at USPS000980) | No evidence. | 10 |
| Julieta Trujillo | Manager, Distribution Operations (Ex. 22 at USPS001159) | Affidavit dated November 28, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001160. | 4 |
| Gloria Twumasi Ankrah | Supervisor, Distribution Operations (Ex. 38 at USPS003817) | Around February 2020. *Id.* at USPS003819. | 16, 29 |
| Aneel Virk | Supervisor (Ex. 19 at USPS001107) | When Plaintiff began working at Ansonia Station with her.  *Id.* at USPS001108. | 8, 17, 19, & 21-22 |
| Christine Warden | Manager, Distribution Operations (Ex. 14 at USPS001067) | Affidavit dated August 22, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001068. | 4 |

| Name | Relevant Position(s) | Date When They Became Aware of Plaintiff's Alleged Protected Activity | Claim Nos. |
|------|---------------------|----------------------------------------------------------------------|------------|
| Kahlil Wilson | Manager, Customer Service Operations (Ex. 10 at USPS001048) | Affidavit disclaims awareness of EEO activity prior to receiving EEO witness interview request on August 31, 2017. *Id.* at USPS001049. | 4 |
| Steven Wojtaszek | Plant Manager (Ex. 7 at USPS001022) | Affidavit dated August 24, 2017, disclaims prior awareness of EEO activity. *Id.* at USPS001023. | 3, 4, 12 |

Chart 2 omits Paragraphs 56–57, 72–73, 80–81, 84–85, and 90–91. Paragraphs 56–57 state that as of September 22, 2018, Kisha Harris held the position of Supervisor of Distribution Operations, and did not have any prior awareness of Plaintiff's EEO activity. ¶¶ 56–57. Paragraphs 72–73 state that as of April 27, 2017, Woodly Lefay held the position of Lead Manager, Distribution Operations and the record evidence does not reflect when, if ever, Woody Lefay became aware of Plaintiff's prior EEO activity. ¶¶ 72–73. Paragraphs 80–81 state that as of April 27, 2017, Jasmine Merritt held the position of Acting Supervisors, Distribution Operations, and the record evidence does not reflect when, if ever, Jasmine Merritt became aware of Plaintiff's prior EEO activity. ¶¶ 80–81. Paragraphs 84–85 state that as of April 27, 2017, Peter Naranjo held the position of Supervisors and the record evidence does not reflect, when, if ever, Naranjo became aware of Plaintiff's prior EEO activity. ¶¶ 84–85. Paragraphs 90–91 state that as of September 24, 2018, Ian Redmond held the position of Supervisor of Distribution Operations and became aware of Plaintiff's prior EEO activity at some point prior to September 24, 2018, when he approved Plaintiff's request for time to work on his EEO complaints. ¶¶ 90-91. Plaintiff admits the contents of paragraphs 56–57, 72–73, 80–81, 84–85 and 90–91. *See infra* at 17–18.

### III.    Money Allegedly Owed to Plaintiff

In addition to the claims above, Plaintiff also asserts that in retaliation for making EEO complaints, Defendant failed to pay him several categories of compensation allegedly owed. These categories include: (1) night differentials, (2) unprocessed payment adjustments, (3) overcharges for healthcare, (4) absence without leave, (5) out of schedule pay, (6) administrative leave, (7) pay-for performance, (8) tour start time, (9) holiday pay adjustments, and (10) time off the clock. The Court describes each of these claims in turn.

First, Plaintiff alleges in the SAC that because he was placed on administrative leave from October 29, 2015, through August 5, 2016, he lost out on Sunday premium pay, night differential pay, holiday work pay, and lost overtime pay. SAC ¶¶ 9–10. Plaintiff alleges that he was placed on administrative leave in retaliation for reporting harassment he faced from Irene Baker to several USPS employees on October 28, 2015. SAC ¶¶ 7–8. However, it is now undisputed that Plaintiff was paid all of the night differential owed to him pursuant to the 2016 settlement agreement between Plaintiff and USPS. ¶ 226.

Second, Plaintiff claims that from February 2015 through October 17, 2016, and beyond, Plaintiff requested pay adjustments that were denied. SAC ¶ 18. Plaintiff asserts that these pay adjustment denials were acts of retaliation. ¶ 19. Plaintiff claims that managers Rafael Astacio, Richard Granigan, Woody Lefay, Ruth Fuchu, and supervisor Lisa Lane were all involved. ECF No. 72-2 at USPS000923. However, with respect to payment adjustments from February 2015 through October 2016, managers Astacio and Fuchu were not aware of Plaintiff's EEO activities during that time period, and there is no evidence that managers Granigan, Lefay, or Lane were aware of Plaintiff's EEO activities during that time period. ¶¶ 227-229.

Third, Plaintiff claims that on September 3, 2016, he learned that he was not informed about the "self plus one" insurance coverage option, and was thus overcharged. SAC ¶ 14. On September 3, 2016, the date Plaintiff claims Vanessa Duncan-Smith failed to inform him about available health insurance options, Duncan-Smith was unaware of Plaintiff's prior EEO activities. ¶ 230.

Fourth, Plaintiff claims that from September 10, 2016, through September 16, 2016, he put in leave requests, which he submitted in advance to his supervisor, Aneel Virk.[3] ¶ 4. Plaintiff initially asserted that, in retaliation, he was charged with Leave Without Pay and being Absent Without Official Leave. *Id.* However, Plaintiff was only granted permission to take leave from September 17, 2016, through September 19, 2016. ¶ 236. From September 10, 2016, to September 16, 2016, Plaintiff was deemed to be absent without leave because he failed to follow the required protocols prior to taking time off. ¶¶ 231–234. Plaintiff was again deemed absent without leave on February 9, 2018, and charged leave without pay for his thirty-minute absence from the low-cost sorter tray. ¶ 252. The loss of pay amounted to $14. ¶ 253.

Fifth, Plaintiff claims that on December 5, 2016, Plaintiff was not paid out-of-schedule pay when his schedule changed to allow him to attend the Postal EEO Mediation Program. SAC ¶ 21. He asserts that managers Duncan-Smith, Baker, and Astacio were responsible. *See* ECF No. 72-2 at USPS000927. On December 5, 2016, Plaintiff attended a Postal EEO Mediation Program related to his 2016 complaint. ¶ 237. It is undisputed that Baker was not responsible for paying Plaintiff for his time at the mediation program. ¶ 238.

---

[3] Plaintiff's Second Amended Complaint identifies his supervisor as "Virk Anil." *See, e.g.*, ¶ 4. In this Opinion, the Court addresses that supervisor by the name signed on his EEO Investigative Affidavit, "Aneel Virk." *See* ECF No. 72-19.

Sixth, Plaintiff claims that he was bullied by his coworkers from November 2016 through January 11, 2017. SAC ¶¶ 22–24. On January 11, 2017, plaintiff was arguing with a co-worker and was subsequently placed on "emergency placement," which is a special form of administrative leave. ¶ 241; ECF No. 72-1 at 76:15–77:15. Plaintiff claims that he was not paid while he was on emergency placement. ¶ 25.

Plaintiff asserts that Plaintiff was harassed by his coworkers on May 22, 2017. SAC ¶ 31. Plaintiff claims that he reported the incident to managers Astacio and Sharron Miller King. SAC ¶¶ 35–36. On June 3, 2017, Plaintiff had an investigative interview concerning the alleged harassment, conducted by Astacio and supervisor Branly Garcia. SAC ¶ 37. Plaintiff was again placed on administrative leave from June 3, 2017, through June 7, 2017, on the grounds that he may be "injurious to self or others." ¶ 246. Plaintiff was underpaid for his time on leave during this period due to a miscommunication with his manager. ¶ 247. During the relevant time period for this claim, neither Garcia nor Miller King was aware of Plaintiff's prior EEO activity. ¶¶ 248–249.

Seventh, in early 2017, Plaintiff did not receive performance pay as a lump sum in the first or second pay period. ¶ 243; SAC ¶ 26. Plaintiff asserts that Jason Marks was similarly situated and received pay for performance. SAC ¶ 26. However, Plaintiff did not receive performance pay as a lump sum because under his 2016 settlement agreement, Plaintiff took on a craft position that was, at that time, not eligible for pay-for-performance. ¶ 244.

Eighth, Plaintiff alleges that on or about March 23, 2018, Plaintiff's pay adjustment was not completed. SAC ¶ 51. Plaintiff asserts that his supervisor, Garcia, denied the pay adjustment and harassed Plaintiff. *Id.* At that time, Garcia was not aware of Plaintiff's EEO activity. ¶ 254.

14

Ninth, Plaintiff claims that around January 13, 2020, he was denied pay adjustments he had been promised during the holiday season. SAC ¶ 85. During this time period, Roger Sterling was the supervisor responsible for granting Plaintiff pay adjustments. ¶ 255. Sterling and Plaintiff discussed the possibility of Plaintiff receiving a pay adjustment, but Plaintiff did not provide a specific date to Sterling for the pay adjustment. ¶¶ 257–258.

Tenth, Plaintiff claims that on July 25, 2020, Plaintiff was charged with leave without pay for being absent, despite being at the assigned machine during the time in question. SAC ¶ 90. On July 25, 2020, Plaintiff's supervisor Gloria Twumasi-Ankrah took him off the clock, thereby preventing him from receiving 35 minutes of overtime, amounting to around $14. ¶¶ 259, 261.

### IV.    Plaintiff's Terms and Conditions of Employment

In addition to the claims above, Plaintiff asserts that he was denied various overtime opportunities and denied other terms and conditions of employment offered to similarly situated co-workers.

#### A.  Overtime Opportunities

Plaintiff first claimed that between September 2016 and October 2016, he was denied overtime opportunities that his similarly situated co-workers Jody Duhaney, Greg Harrell, A. King, Arlene Hernandez, and Sharlene Malloy were granted. SAC ¶ 3; ECF No. 72-19 at USPS001109–USPS001110. He claimed that manager Virk told his supervisor Denise Galleti to cut Plaintiff's overtime. Counterstatement ¶ 264. However, the undisputed evidence now shows that Plaintiff declined to take any overtime opportunities during this period. ¶¶ 262–263.

Plaintiff initially asserted that from November 2016 through the present, he did not have the same overtime opportunities as his similarly situated co-workers. SAC ¶ 20. The

documentary evidence does not reflect, however, that plaintiff was not provided the same overtime opportunities as similarly situated coworkers. ¶ 267. Additionally, in 2016, Plaintiff's managers Astacio, Fuchu, Duncan-Smith, and Lane were not aware of Plaintiff's prior EEO activity. ¶¶ 269–70.

Plaintiff initially claimed that on Columbus Day in 2016, he was not allowed to work but his similarly situated co-workers were. SAC ¶ 16. However, the undisputed evidence now shows that Plaintiff was not given a work shift on Columbus Day in 2016 because Plaintiff did not submit a volunteer slip before Columbus Day as required. ¶¶ 271–272. Neither manager Duncan-Smith nor manager Galletti were responsible for selecting volunteers for the Columbus Day shift. ¶ 273. That day, Jody Duhaney, Greg Harrell, and other clerks were selected to work via standard procedures from the holiday list. ¶ 275.

Plaintiff asserts that he was denied time to wash up on April 7, 2018, while other similarly situated co-workers received wash-up time. SAC ¶¶ 70–71. There is no record evidence that any other USPS employee was similarly situated to and treated differently from Plaintiff with respect to being sent home early during wash-up time. ¶ 277.

### B.  Other Terms and Conditions of Employment

On September 3, 2016, Plaintiff was not given orientation, safety training, and a uniform voucher. ¶ 278. Plaintiff asserts that he was supposed to be given these as required by Occupational Safety and Health Administration regulations, and that similarly situated co-workers received the training and voucher. SAC ¶ 12. Plaintiff identified manager Duncan-Smith, manager Galleti, and supervisor Virk as responsible for this failure in his complaint. SAC ¶ 13. However, neither Duncan-Smith nor Galletti were involved in or aware of these events, and they both also lacked knowledge of Plaintiff's prior EEO activity at that time. ¶ 279.

Plaintiff asserts that he requested to view his "Employee Everything Report," which was denied. SAC ¶ 17. Between September 21, 2016, and October 14, 2016, Plaintiff did not receive, at his request, an "Employee Everything Report." ¶ 282. However, Plaintiff did not request a copy of the report from Virk. ¶ 283. And no other employees have been identified who were involved in this incident.

Plaintiff asserts that on March 5, 2018, he requested to work on the warmer side of a machine, but his request was denied. SAC ¶ 50. Plaintiff claims that Beatrice Carty and Rise Gist were responsible for the denied request. *See* ECF No. 72-25 at USPS000359; ECF No. 72-29 at USPS000385. Plaintiff further alleges that similarly situated coworkers were allowed to work on the warmer side of the machine. SAC ¶ 50. However, as is now undisputed, on this date, neither Carty nor Gist were aware of Plaintiff's prior EEO activities. ¶ 285.

Plaintiff asserts that on May 28, 2018, manager Berlinda Howard told Plaintiff that she had been watching him for some weeks and put him on notice for future write-ups. ¶ 286. However, on that date, Howard was not aware of Plaintiff's prior EEO activities. ¶ 286.

In 2018, Plaintiff received Letters of Warning from his supervisor, Myrna Phan, after being accused of missing his work assignment. ¶ 287; SAC ¶ 81. Later, on April 6, 2019, Phan instructed Plaintiff to move a container, and Plaintiff alleges Phan denied Plaintiff help. ¶ 288; SAC ¶ 83. There is no evidence in the record demonstrating the size and weight of the container Plaintiff moved that day. ¶ 289. During this time period, Phan was in charge of Plaintiff's staffing, and the only information shared with her about Plaintiff's EEO activity was whether Plaintiff needed time off to work on his EEO complaints. ¶ 290.

Plaintiff asserts in his SAC that between January 2020 and May 2020, his work assignments were not properly rotated and he was placed on less desirable assignments. SAC

¶ 87. However, from January to May 2020, Plaintiff was given work assignments based on the needs of his facility. ¶ 291. Accordingly, during this period, Plaintiff was rotated to different work assignments when doing so was consistent with USPS's needs and when other assignments were available. ¶ 292.

Plaintiff claimed in the SAC that April 22, 2020,[4] he was sent home for praying for a few seconds while there was no mail on his machine. SAC ¶ 89. Plaintiff also asserted that similarly situated mail handlers continued talking on their personal phones on this date. *Id.* However, it is now undisputed that on April 22, 2020, Plaintiff was sent home early because he was found sitting with his eyes closed on the job. ¶ 295. There is no evidence that Stephanie Miles, who was allegedly involved in this incident, was aware of Plaintiff's prior EEO activity on this date. ¶ 296.

On June 16, 2020, Plaintiff requested assistance in moving triwall, and the request was denied. ¶ 297. Moving triwall was part of Plaintiff's job duties at the time. ¶ 298. There is no evidence in the record showing the size and weight of the triwall Plaintiff moved that day. ¶ 299.

Plaintiff asserts that on August 31, 2020, his supervisor Gloria Twumasi-Ankrah[5] allegedly breached his privacy. SAC ¶ 91. Plaintiff discovered that one of his medical files was edited with white-out outside of his presence at an unknown time, and based on that alone, he believes that his supervisor Twumasi-Ankrah read his files. ¶ 300. While Twumasi-Ankrah has faxed paperwork for Plaintiff to Human Resources, as the undisputed evidence shows, she has no

---

[4] The 56.1 Statement at ECF No. 68 states that Plaintiff was sent home for sleeping on the job on April 20, 2020. ¶ 295. However, all corroborating evidence indicates that the correct date is April 22, 2020. *See* ECF No. 72-4 at USPS003659; SAC ¶ 89; ECF No. 72-1 at 145:14–150:4.

[5] Plaintiff's Second Amended Complaint identifies his supervisor as "Gloria Twuwark." *See* ¶ 91. In this Opinion, the Court addresses that supervisor by the name signed on her EEO Investigative Affidavit, "Gloria Twumasi-Ankrah." *See* ECF No. 72-38.

recollection of ever being asked to process medical files for anyone (including Plaintiff) or of reading Plaintiff's medical files. ¶ 301.

Plaintiff asserts that management created a hostile work environment for Plaintiff. SAC ¶¶ 49, 66. He states that his co-workers would tease him for his demotion. *See* ECF No. 72-1 at 95:17–20; ECF No. 72-3 at 8. However, Plaintiff testified that he wholeheartedly believes that the post office is a great place to work, and that he loves working for the post office and plans to continue working there. ¶¶ 302–03.

## PROCEDURAL HISTORY

Plaintiff filed the instant action on April 2, 2022, proceeding *pro se.* ECF No. 1. Plaintiff amended the complaint first on July 25, 2022, and again on October 26, 2023. ECF Nos. 13, 36 ("SAC").

On November 9, 2022, Judge Furman (who the case was originally assigned to) set a discovery deadline of March 9, 2023. ECF No. 28. On January 30, 2023, Plaintiff sought a discovery extension, which the Government consented to. ECF No. 29. Judge Furman extended discovery through September 9, 2023, but warned that "given the length of the extension, the parties should not expect any further extensions." ECF No. 30. The case was reassigned to the undersigned on June 27, 2023. ECF No. 31.

On July 10, 2023, Plaintiff requested a stay through January 2024, with new deadlines for discovery to be implemented thereafter. ECF No. 32. The Court held a status conference on July 26, 2023, to address Plaintiff's request, and extended the discovery deadline to January 5, 2024. The parties appeared before the Court again on November 7, 2023, where the Court ordered Plaintiff to respond to the Government's outstanding discovery requests by no later than November 21, 2023. Plaintiff sought yet another extension, which the Court granted, extending

Plaintiff's deadline to respond to the Government's discovery requests to December 23, 2023. ECF Nos. 39, 40. Notwithstanding the Court's warning that it would not grant further extensions of the deadline, *see* ECF No. 40, on December 8, 2023, Plaintiff requested another extension. ECF No. 44. The Court granted the extension, moving Plaintiff's deadline to respond to the Government's discovery requests to February 3, 2024. ECF No. 45. The Court made clear that it would not grant any further extensions absent extraordinary circumstances. *Id.*

On March 1, 2024, the Government filed a status letter noting the "significant delays Plaintiff has caused." ECF No. 51. Thereafter, the Court extended the parties' deadline to finish fact discovery to April 19, 2024. ECF No. 52. On April 10, 2024, the Government sought a court conference to address trouble scheduling Plaintiff's deposition within the discovery deadlines, and Plaintiff's request for yet another discovery deadline extension. ECF No. 55. At the conference, the Court made clear that it would not extend the April 19, 2024 deadline for fact discovery, but would permit the Government to depose Plaintiff by no later than May 10, 2024. ECF No. 58.

On September 5, 2024, Defendant moved for summary judgment on Plaintiff's Title VII claims for retaliation, discrimination, and hostile work environment, as well as Plaintiff's age discrimination claims under the ADEA and Plaintiff's Section 1981 discrimination claim. ECF Nos. 67, 68, 69. The following day, Defendant filed an amended memorandum of law in support of his motion for summary judgment which corrected the omission of a table of authorities along with non-substantive citation and typographical errors. ECF No. 71 ("Mem."), 73. The Government also served Plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" which Plaintiff received on September 12, 2024. ECF Nos. 70, 74. The notice explained Plaintiff's evidentiary obligations regarding Defendant's summary judgment

motion. ECF No. 70. On October 4, 2024, Plaintiff requested an extension of time to file his opposition and an increased page limit, which the court granted. ECF Nos. 75, 77. In its order, the Court also reminded Plaintiff of his obligation to comply with Rule 56. ECF No. 77. In late November, Plaintiff requested a further extension of his deadline to oppose the motion for summary judgment due to pending surgery. ECF Nos. 78, 79. The Court ordered Plaintiff to provide medical documentation justifying the request for a further extension by November 29, 2024. ECF No. 80. Plaintiff submitted medical documentation on December 3, 2024, and the Court extended Plaintiff's deadline to oppose the motion for summary judgment to February 7, 2025. ECF No. 83. Plaintiff filed his opposition on February 7, 2025. ECF No. 86 ("Opp.").

On February 10, 2025, Defendant filed a letter with the Court concerning Plaintiff's improper Local Rule 56.1 statement. ECF No. 89. On February 11, the Court ordered Plaintiff to submit an amended counterstatement that complies with Local Rule 56.1 by March 10, 2025. ECF No. 90. The Court warned that any further failure to comply with Local Rule 56.1 would result in the Court deeming any statement in the Government's statement of material of facts to be admitted where Plaintiff asserts a denial without citing a specific page in the record. *Id.* On February 25, 2025, Plaintiff requested an extension of time to file an amended counterstatement, which the Court granted, warning that no further extensions would be granted. ECF Nos. 91, 92. On March 4, 2025, Plaintiff again requested an extension of time. ECF No. 93. The Court directed Plaintiff to the Court's prior order at ECF No. 93. ECF No. 94. Plaintiff filed his amended counterstatement first on March 24, 2025, without exhibits, and again on March 28, 2025, with exhibits. ECF Nos. 95, 96 ("Counterstatement")[6], 98.

---

[6] The Counterstatement includes a substantively edited opposition brief, which the Court declines to consider.

On April 6, 2025, Plaintiff informed the Court that he had been unable to upload exhibits related to his amended counterstatement, and the Court directed Plaintiff to divide the files and submit them to the *pro se* office by no later than April 28, 2025. ECF Nos. 98, 100. On April 30, 2025, Plaintiff requested additional time to submit his files and noted that Defendant had already received said files. ECF No. 101. On May 1, 2025, the Court directed Defendant to upload Plaintiff's documents by May 9, 2025. ECF No. 102. On May 9, 2025, Defendant submitted a letter to the Court opposing Plaintiff's belated supplement to summary judgment filings and requested that the Court disregard any exhibits to Plaintiff's summary judgment opposition that were not produced in discovery. ECF No. 103. Defendant also appended Plaintiff's exhibits to the letter and requested an extension of time to file its reply brief. *Id.* The Court extended Defendant's deadline to reply and instructed Defendant to address his request that the Court disregard Plaintiff's exhibits in the reply brief. ECF No. 104. Defendant filed his reply brief on June 13, 2025. ECF No. 106 ("Reply").

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets his initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports his motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. FED. R. CIV. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest, including when facing a summary judgment motion." *Platt as co-trustees of Platt Fam. Artwork Tr. v. Michaan*, 695 F. Supp. 3d 420, 436 (S.D.N.Y. 2023), *appeal dismissed sub nom. Platt co trustee of Platt Fam. Artwork Tr. v. Michaan*, No. 23-7676, 2023 WL 9510839 (2d Cir. Dec. 27, 2023). "Nevertheless,

the application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (internal citation and quotation marks omitted).

## DISCUSSION

First, the Court addresses several evidentiary issues with respect to the instant motion for summary judgment. Namely, the Court denies Plaintiff's request that it withhold a decision on the motion for summary judgment, deems each paragraph in Plaintiff's Counterstatement that is without citation to the record as admitted, and declines to consider Plaintiff's exhibits that were not produced in discovery. Second, the Court analyzes Plaintiff's Title VII retaliation claims, and finds that Plaintiff fails to state a prima facie case and rebut Defendant's legitimate, non-discriminatory reasons for certain actions. Third, the Court analyzes Plaintiff's Title VII discrimination claim, finding that Plaintiff has not adduced any evidence that he was qualified for the positions he did not receive, and he fails to prove circumstances that give rise to an inference of discrimination. Fourth, the Court analyzes Plaintiff's Title VII claim for a hostile work environment, finding that based on the lack of a connection to Plaintiff's protected group, the claim fails. Fifth, the Court analyzes Plaintiff's ADEA discrimination claim, finding that because there is no evidence with respect to Plaintiff's age or any age-related discrimination, the claim fails. Lastly, the Court analyzes Plaintiff's discrimination claim under 42 U.S.C. § 1981 and finds that it fails as a matter of law because the claim does not apply to Defendant.

## I.    Evidentiary Issues

### A.  The Court Declines to Withold Decision on the Motion for Summary Judgment

Plaintiff requests that the "Court withhold decision on the motion for summary judgment pursuant to Fed. R. Civ. P. 56(e)(1) and grant Plaintiff the opportunity to specifically respond to

any deficiencies in his response." Opp. at 1. In the alternative, pursuant to Fed. R. Civ. P. 56(d)(2), Plaintiff requests that the Court grant Plaintiff an opportunity for further discovery. *Id.* The Court denies both requests.

Federal Rule of Civil Procedure 56(e)(1) states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact." District courts are given wide discretion under this Rule. *See Hincapie v. City of New York*, No. 18-CV-3432 (PAC), 2022 WL 2870411, at *2 n.4 (S.D.N.Y. July 21, 2022) (noting that "district courts also have significant discretion under Rule 56(e)(1) of the Federal Rules of Civil Procedure"). Here, the Court has already given Plaintiff ample opportunity to properly support or address facts. Indeed, Plaintiff had nearly a year and a half to complete discovery and was granted four extensions. And with respect to summary judgment, Plaintiff was warned that he was obligated to comply with Federal Rule of Civil Procedure 56 despite his *pro* se status, ECF No. 77, but he still failed to submit an appropriate Rule 56.1 counterstatement. *See* ECF No. 86. Nonetheless, Plaintiff was given an additional month to file an amended statement in compliance with Local Rule 56.1. ECF No. 90. In that Order, the Court warned Plaintiff that any further failure to comply with Local Rule 56.1 would result in the Court deeming to be admitted any statement in the Government's statement of material facts to which Plaintiff asserts a denial without citing a specific page in the record. *Id.* Plaintiff then requested another extension, which the Court granted, moving the deadline for his amended counterstatement to March 24, 2025. ECF No. 92. The Court warned Plaintiff that no further extensions would be granted. *See* ECF Nos. 92, 94.

"While *pro se* plaintiffs should be granted special leniency regarding procedural matters, the indulgence afforded to a *pro se* litigant should not extend to the disregard of a judge's plain directives." *Nieves v. Dist. Council 37 (DC 37), AFSCME, AFL-CIO*, No. 04-CV-8181 (RJS), 2009 WL 4281454, at *1 (S.D.N.Y. Nov. 24, 2009), *aff'd sub nom. Nieves v. Roberts*, 420 F. App'x 118 (2d Cir. 2011) (cleaned up) (declining to consider unsworn documents submitted by *pro se* plaintiff in connection with motions). As such, the Court denies this request.

Next, Plaintiff requests the opportunity for further discovery. Federal Rule of Civil Procedure 56(d)(2) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Plaintiff has provided no affidavit or declaration. Additionally, Plaintiff has had ample opportunity to obtain affidavits or declarations, and to take discovery. Discovery and summary judgment deadlines in this matter were extended several times. *See, e.g.*, ECF Nos. 40, 45, 66, 77, 83, 90, 91. Indeed, this case was initiated nearly three-and-a-half years ago, with over a year of discovery. Accordingly, the Court declines to allow Plaintiff additional time to obtain affidavits or declarations, or to take further discovery. *See Hadwan v. United States Dep't of State*, No. 17-CV-578 (VEC), 2021 WL 4037714, at *6 (S.D.N.Y. Sept. 3, 2021) (denying plaintiff's motion to supplement the record where plaintiff failed to demonstrate any basis to do so).

### B. The Court Deems Each Paragraph in Plaintiff's Counterstatement That is Without Citation to the Record as Admitted

On September 5, 2024, the Government served Plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" which Plaintiff received on September 12, 2024. ECF Nos. 70, 74. The notice explained that Plaintiff was required to "submit evidence, such as witness statements or documents, countering the facts asserted by defendant and raising

material issues of fact for trial" and directed Plaintiff to the *Pro Se* Office for any questions. ECF No. 70. On October 8, 2024, Plaintiff was reminded that "each numbered paragraph in Government's statement of material facts, at ECF No. 68, will be deemed to be admitted for purposes of the motion for summary judgment unless specifically challenged by a correspondingly numbered paragraph in Plaintiff's Counter 56.1 statement; and (2) Plaintiff's counterstatements challenging Government's statement of material facts must be followed by citation to admissible evidence, as set forth in Federal Rule of Civil Procedure 56(c)." ECF No. 77 (alternations adopted) (internal quotation marks omitted). On February 11, 2025, Defendant raised that Plaintiff's Counterstatement was "replete with denials that d[id] not contain any citation to the record." ECF No. 89. In response, the Court warned that "[a]ny further failure by Plaintiff to comply with Local Rule 56.1 w[ould] result in the Court deeming to be admitted any statement in the Government's statement of material fact to which Plaintiff asserts a denial without citing a specific page in the record." ECF No. 90.

Despite ample warning and instruction, Plaintiff's final version of his Counterstatement is replete with denials unsupported by citations to the record.[7] Accordingly, the Court deems each paragraph in Plaintiff's Counterstatement that is without citation to the record as admitted. *See Kalamaras v. County of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *14 (E.D.N.Y. Sept. 16, 2019) (deeming facts in defendants' 56.1 statement admitted for purposes of summary judgment motion where plaintiff "failed to submit a statement containing correspondingly numbered paragraphs responding to each numbered paragraph in . . . defendants' Rule 56.1 statement" and so "failed to specifically controvert" those facts) (cleaned up); *Giannullo v. City*

---

[7] Although at first glance, many statements in Plaintiff's Counterstatement appear to have citations, these are simply the record cites already included by Defendant. *Compare* 56.1 Statement *with* Counterstatement.

*of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *see also Galindo v. Instalaciones de Tendidos Telefonicos, S.A.*, 508 F. App'x 76, 79 (2d Cir. 2013) (holding that plaintiffs' failure to submit a proper 56.1 statement "permitted the district court to assume the truth" of defendant's uncontroverted Rule 56.1 statement); *Anand v. New York State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616 (KBF), 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (explaining that a *pro se* litigant is not excused from the rule that permits to courts to consider 56.1 statements as uncontested and admissible where the non-moving party fails to properly respond); *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813 (KBF), 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (same).

## C. The Court Declines to Consider Plaintiff's Exhibits Appended to His Summary Judgement Opposition

Plaintiff's opposition to Defendant's motion for summary judgment has several appended exhibits. *See* ECF Nos. 96-1; 96-2. Defendants assert that none of the exhibits should be considered because they were not produced in discovery. Reply at 2–3. Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose, during discovery, any documents in a party's possession that support any claims or defenses, which must be supplemented in a timely manner as necessary. FED. R. CIV. P. 26(a), (e). A party that fails to disclose information required by the rule cannot use the information to support a motion unless the failure to disclose was harmless or substantially justified. FED. R. CIV. P. 37(c)(1).

Here, Plaintiff has not shown that failure to disclose these exhibits was harmless or substantially justified. Additionally, Plaintiff has not disputed Defendant's assertion that the exhibits were not provided during discovery, nor has he provided an explanation for not having previously produced the documents. "Accordingly, the Court may not consider any undisclosed

exhibits . . . ." *United States ex rel. Taylor v. GMI USA Corp.*, 774 F. Supp. 3d 645, 652 (S.D.N.Y. 2025) (declining to consider a *pro se* plaintiff's undisclosed exhibits at summary judgment evidence); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 269 (S.D.N.Y. 2014), *aff'd,* 882 F.3d 394 (2d Cir. 2018) (holding that the court may not consider exhibits that were produced for the first time, not in discovery, but in response to a motion for summary judgement).

## II.    Plaintiff's Title VII Claims for Retaliation Fails

"To establish a prima facie case of retaliation, a plaintiff must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). If a plaintiff makes this showing, it creates "a presumption of retaliation, which the defendant may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (cleaned up). "If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (cleaned up).

Here, the Court assumes without deciding that Plaintiff meets the first two elements—namely, that Plaintiff was engaged in protected activity by filing EEO complaints and that USPS was aware of these complaints. However, all of Plaintiff's claims of retaliation fail as a matter of law based on the other required elements. As explained below, for several of Plaintiff's claims, he fails to show material adverse action. For others, he cannot show any causal connection

between any protected activity and the alleged adverse action. And for the remaining, he cannot overcome Defendant's legitimate, non-retaliatory reasons for the adverse employment action.

### A. Several of Plaintiffs Claims Fail to Establish a Materially Adverse Action

Claims 1, 2, 5, 7, 13, 14, 16, 19, 20, 21, 22, 23, 24, 25, 27, and 29 fail to establish a materially adverse action. To establish a materially adverse action, a plaintiff "need show only some injury respecting h[is] employment terms or conditions." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024). The alleged change "must have left [the plaintiff] worse off, but [it] need not have left h[im] significantly" worse off. *Id.*

Here, Plaintiff points to a series of alleged trivial failures and actions by USPS that fail to amount to material adverse action. First, several of the alleged actions relate to Plaintiff's 2016 settlement agreement with USPS (Claims 1, 2, and 5). However, it is undisputed that Plaintiff voluntarily accepted a downgrade in levels and reduced compensation in exchange for not being terminated from USPS altogether after the agency concluded that Plaintiff engaged in misconduct. No claim of retaliation can lie from Plaintiff's accepted punishment for his own misconduct. *See Santiago v. City of New York*, No. 20-CV-6098 (ALC) (SLC), 2024 WL 4354878, at *11 (S.D.N.Y. Sept. 28, 2024) (finding that Plaintiff's voluntary vested retirement did not amount to a materially adverse change in the terms and conditions of employment).

Second, for several actions, Plaintiff fails to claim any adverse action occurred. For example, with respect to Claims 24 and 25, Plaintiff received notice of potential disciplinary action for his work and other letters of warning that directed Plaintiff to complete his job duties without any further action by USPS. However, "[a] mere reprimand or threat of disciplinary proceedings without subsequent consequences is not a materially adverse employment action." *Walker v. Metro N. Commuter R.R.*, No. 23-CV-9883 (JPO), 2024 WL 4266261, at *5 (S.D.N.Y.

Sept. 23, 2024); *see also Franco v. City of New York*, No. 19-CV-5905 (AMD) (CLP), 2025 WL 964014, at \*12 (E.D.N.Y. Mar. 31, 2025) (explaining that reprimands or threats that do not lead to subsequent consequences are not actionable forms of retaliation); *Gahfi v. New York City Dep't of Educ.*, No. 23-CV-1782 (BMC), 2025 WL 675933, at \*10 (E.D.N.Y. Feb. 28, 2025) (similar).

Similarly, with respect to Claim 29, Plaintiff claims his supervisor read his medical file, but took no other action. Plaintiff adduces no evidence that he suffered any consequence or that the terms of his employment changed as a result of the medical documents being viewed by another employee. This claim also cannot constitute retaliation. *See Williams v. NYS Dep't of Corr. & Cmty. Supervision*, No. 17-CV-317 (WFK), 2024 WL 5356146, at \*7 (E.D.N.Y. Dec. 13, 2024), *appeal dismissed* (Mar. 4, 2025) (quoting *Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019)) (explaining that an undesired action "will not constitute an adverse employment action unless [it] is accompanied by other adverse consequences").

Third, the remaining retaliatory actions Plaintiff claims USPS committed are mere "'trivial harms,' or 'those petty slights or minor annoyances that often take place at work and that all employees experience. . . .'" *Dawson v. Beebe*, No. 24-CV-1548 (KPF), 2025 WL 2402289, at \*7 (S.D.N.Y. Aug. 19, 2025) (quoting *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017)). They cannot and do not satisfy the material adverse action element Plaintiff is required to demonstrate to satisfy his claims. *Id.* His remaining grievances are as follows:

- Failed to receive certain employment-related documents and orientation and training materials (Claims 7, 21, and 22);

- Lost $14 in wages for lost time (Claims 13 and 16);

- Received a new start time for Plaintiff's shift (Claim 14);

- Did not receive a specific work shift requested (Claim 19);

- Denied time to wash up (Claim 20);

- Denied request to work on the warmer side of the machine (Claim 23);

- Sent home early on April 22, 2020 (Claim 27);

- Required to move triwall and triwall shipping containers (Claim 28); and

- Worked his assigned rotations based on facility needs (Claim 26)

None of these actions amount to materially adverse employment action. *See, e.g.*, *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 449 (S.D.N.Y. 2002), *aff'd*, 64 F. App'x 836 (2d Cir. 2003) (concluding that losing $62.47 was insufficient to constitute an adverse employment action); *Tyson-Phipps v. Rubio*, 779 F. Supp. 3d 440, 460 (S.D.N.Y. 2025) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience . . . ."); *Royall v. City of Beacon*, No. 24-CV-3 (KMK), 2024 WL 4266546, at *14 (S.D.N.Y. Sept. 23, 2024*)* (explaining that receiving unfavorable schedules, without more, is not a materially adverse employment action); *Sethi v. Narod*, 12 F. Supp. 3d 505, 533 (E.D.N.Y. 2014) ("Plaintiff's lack of a welcome email and business cards are trivial matters that do not qualify as adverse employment actions.") (collecting cases). As such, Plaintiff's Claims 1, 2, 5, 7, 13–14, 16, 19–25, and 26–29 all fail as a matter of law.

## B. Several of Plaintiffs Claims Fail to Establish Causation

For Claims 6, 9, 12, 17, and 18, Plaintiff fails to come forward with any evidence establishing the causation prong for retaliation. "A causal connection between the protected

activity and the adverse action may be demonstrated by showing (1) direct proof of retaliatory animus directed against the plaintiff, (2) disparate treatment of similarly situated employees, or (3) that the retaliatory action occurred close in time to the protected activities." *Baldwin v. Goddard Riverside Cmty. Ctr.*, 53 F. Supp. 3d 655, 669 (S.D.N.Y. 2014), *aff'd*, 615 F. App'x 704 (2d Cir. 2015) (cleaned up). For each claim addressed in this section, Plaintiff fails to submit proof of retaliatory animus or that he was treated differently from similarly situated employees beyond conclusory assertions. *See, e.g.*, ¶¶ 245, 266, 267, 272, 281. And as explained *supra*, Plaintiff's self-serving affidavit, without more, is insufficient. *See supra* n.2. Therefore, the Court considers only the temporal connection between the alleged retaliation and the protected activities. *See Nieves v. Dist. Council 37 (DC 37), AFSCME, AFL-CIO*, No. 04-CV-8181 (RJS), 2009 WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009), *aff'd sub nom. Nieves v. Roberts,* 420 F. App'x 118 (2d Cir. 2011) (addressing only the temporal connection where Plaintiff "put forward neither evidence that similarly situated employees were treated differently nor direct proof of discriminatory animus").

With respect to Claims 6, 9, 12, 17, and 18, an alleged temporal connection cannot save Plaintiff's claims either. In each, the individual actors allegedly involved in retaliation were not aware of his EEO activity at the time, which dooms Plaintiff's claims. *See* ¶¶ 227, 228, 239, 240, 248, 249, 265, 268, 269. For example, neither Astacio nor Fuchu were aware of Plaintiff's past EEO activities from February 2015 through October 2016 (Claim 6), when Plaintiff asserts that they denied his pay adjustments. *See* ECF No. 72-21 at USPS001137 (Astacio verifying that he became aware of Plaintiff's EEO activities around July 2017); ECF No. 72-57 at USPS004538 (Fuchu verifying that she became aware of Plaintiff's EEO activities in August 2019). Neither Duncan-Smith nor Astacio were aware of Plaintiff's prior EEO activities when Plaintiff claimed

33

that they did not give him out-of-schedule pay in December 2016 (Claim 9). ¶¶ 239–240. And,

when Plaintiff was placed on administrative leave in June 2017 (Claim 12), his supervisors

Garcia and Astacio were not aware of Plaintiff's prior EEO activity, and there is no evidence that

Miller King was aware either. ¶¶ 248–249. Additionally, in connection with Plaintiff's claims

concerning overtime opportunities, Duncan-Smith, Astacio, and Fuchu were not aware of

Plaintiff's prior EEO activity, and there is no evidence that Lane was aware of Plaintiff's EEO

activities when he was allegedly denied overtime opportunities in 2016 (Claims 17 and 18). *See*

¶¶ 265, 268.  Accordingly, Defendant's motion for summary judgment with respect to these

claims is GRANTED.

### C.  Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory Explanations

Plaintiff's remaining claims—Claims 3, 4, 8, 10, 11, and 15—fail at the last step of the

analysis. At this stage, "defendants must 'introduce evidence which, *taken as*

*true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse

action." *Mattera v. JPMorgan Chase Corp.,* 740 F.Supp.2d 561, 574 (S.D.N.Y. 2010) (internal

citation omitted). Then, the burden returns to plaintiff to show "at the final step of the analysis

that retaliation was a 'but-for' cause of the adverse action, not simply a 'substantial' or

'motivating' factor in the employer's decision." *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F.

Supp. 3d 51, 70 (S.D.N.Y. 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338,

348, 360 (2013)).

Here, Defendant has offered legitimate, non-discriminatory explanations for all of the

remaining claims, which Plaintiff has failed to rebut. They are as follows:

| Claim Number | Action by USPS | Unrebutted Legitimate, Non-Discriminatory Reason |
|---|---|---|

| 3, 4 | Denied a promotion | Plaintiff not promoted because of his recent demotion. *See* ECF No. 72-1 at 36:1–4 (plaintiff acknowledging that anyone seeing his application would see that he had been demoted from level 17 to level 4). |
|------|--------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 8 | Deemed absent without leave from September 10-16, 2016. | Plaintiff failed to follow USPS protocol by failing to call the system and fill out the required forms. *See* ECF No. 72-19 at USPS001111. |
| 10 | Placed on emergency leave. | Plaintiff was placed on emergency leave for arguing with a coworker. ECF No. 72-1 at 76:13–77:15. |
| 11 | Denied performance pay as a lump sum in 2017. | Because Plaintiff assumed a craft position after his demotion, he was not eligible for this pay. *See* ECF No. 72-5 at USPS000998. |
| 15 | Denied pay adjustment in January 2020 | Because Plaintiff failed to provide the proper information, including the dates for the adjustment, to his supervisor, he was denied the pay adjustment. *See* ECF No.72-31 at USPS003729–31. |

Accordingly, Plaintiff's remaining retaliation claims fail. Defendant's motion for summary judgment with respect to retaliation claims 3, 4, 8, 10, 11, and 15 is GRANTED.

### III.    Plaintiff's Title VII Discrimination Claim Fails

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that "(1) []he is a member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). If a plaintiff sufficiently shows a prima facie case of retaliation, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Id.* Once a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant to articulate

some legitimate, nondiscriminatory reason for the alleged discrimination." *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 522 (S.D.N.Y. 2019) (internal citation and quotation marks omitted). Then, "the plaintiff must show that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal citation and quotation marks omitted).

Plaintiff asserts that he is a member of a protected class based on his religion (Hindu-Jain), national origin (India), and race (Indian). As such, Plaintiff meets the first element of the prima facie case. However, with respect to the second element, Plaintiff adduces no evidence that he was qualified for any of the positions for which he applied beyond his own conclusory statements in his self-serving affidavits. Although the burden is low, Plaintiff fails to "demonstrate that he possesses the basic skills necessary for performance of the job[s]" for which he applied. *de la Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996) (cleaned up).

Additionally, Plaintiff fails to satisfy his burden of proving circumstances that give rise to an inference of discrimination. "An inference of discrimination can be proven through a variety of methods, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 389 (S.D.N.Y. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). Plaintiff provides no evidence that his employer was ethnically degrading or made invidious comments about Plaintiff's protected groups. Instead, Plaintiff merely asserts that his evidence for discrimination is that there are very few Indian and Jain (followers of the

36

Jain religion) supervisors. ECF No. 72-1 at 111:24–112:7. Plaintiff's unsupported assertion is insufficient to give rise to an inference of discrimination.

Furthermore, as Defendant highlights, Plaintiff stated on the record that he has no evidence he was discriminated against based on his protected group aside from his recollection of viewing his eCareer file, which allegedly includes mention of his national origin and race. Mem. at 46; ECF No. 72-1 at 113:1–23. This evidence is also insufficient to give rise to an inference of discrimination. *See Fu v. Consol. Edison Co. of New York, Inc.*, 855 F. App'x 787, 790 (2d Cir. 2021) ("A party cannot defeat a motion for summary judgment with conclusory allegations or unsubstantiated speculation.") (internal citation and quotation omitted).

"Plaintiff has not provided this Court with any credible evidence of discrimination based on his race[, religion, or national origin], and unsupported allegations do not create a material issue of fact." *Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 205 (E.D.N.Y. 2012), *aff'd*, 522 F. App'x 46 (2d Cir. 2013) (internal citation and quotation marks omitted). Because Plaintiff is unable to show a prima facie case, Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claim is GRANTED. *See Espinoza*, 304 F. Supp. 3d at 391 (granting defendant's summary judgment motion with respect to Plaintiff's Title VII claim where plaintiff failed to establish a prima facie case of discrimination under the first stage of *McDonnell Douglas*).

## IV.    Plaintiff's Title VII Hostile Work Environment Claim Fails

"To establish a hostile work environment under Title VII . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir.

2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). The "standard has both objective and subjective components: the conduct must be so severe or pervasive that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment as such." *Id.* at 321 (internal citation omitted). A plaintiff must also demonstrate that "'a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Clemente v. New York State Div. of Parole*, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997)). "Finally, a plaintiff must also demonstrate that []he was subjected to the hostility because of h[is] membership in a protected class." *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 346 (S.D.N.Y. 2020) (cleaned up).

Plaintiff's claims regarding a hostile work environment fail because he does not demonstrate any discriminatory animus. It is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Indeed, "while bullying and harassment have no place in the workplace, unless they are motivated by the victim's membership in a protected class, they do not provide the basis for an action under federal anti-discrimination laws." *Stinson v. Morningstar Credit Ratings, LLC*, No. 22-CV-06164 (JLR), 2024 WL 3848515, at *19 (S.D.N.Y. Aug. 16, 2024). Here, as described above, Plaintiff fails to come forward with any evidence tying any of the incidents at issue as related to his religion or nationality. For this reason, Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim is GRANTED.

## V.    Plaintiff's Age Discrimination Claim Under the ADEA Fails

"In order to establish a prima facie case of age discrimination, [Plaintiff] must show (1) that []he was within the protected age group, (2) that []he was qualified for the position, (3) that []he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). "To prevail on an ADEA age discrimination claim, it is not sufficient for a plaintiff to show 'that age was simply a motivating factor' in the employer's adverse action." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302–03 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009)). "Instead, 'the ADEA's requirement that an employer took adverse action 'because of' age requires that age was the 'reason' that the employer decided to act." *Id.* at 303 (alterations adopted) (quoting *Gross*, 557 U.S. at 176). "Thus, to establish age discrimination under the ADEA, 'a plaintiff must prove that age was the but-for cause of the employer's adverse decision.'" *Id.*

Plaintiff asserts a claim for age discrimination, and states that he was born in the year 1953. SAC at 4. Aside from stating the year he was born, Plaintiff makes no assertions whatsoever with respect to his age. *See generally* SAC. "On a motion for summary judgment on an ADEA claim, the court must examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Carmellino v. Dist. 20 of New York City Dep't of Educ.*, No. 03-CV-5942 (PKC), 2006 WL 2583019, at *7 (S.D.N.Y. Sept. 6, 2006), *aff'd in part sub nom. Mauskopf v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 100 (2d Cir. 2008), and *aff'd in part sub nom. Papasmiris v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 97 (2d Cir. 2008) (internal citation and quotation omitted).

Here, the record is devoid of any evidence "raising even a minimal inference of age-motivated conduct." *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 457 (S.D.N.Y. 2023), *aff'd*, No. 23-608, 2024 WL 1787108 (2d Cir. Apr. 25, 2024). Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's age-based discrimination claim under the ADEA is GRANTED. *See id.*

## VI.    Plaintiff's Discrimination Claim Under Section 1981 Fails

Lastly, Plaintiff asserts a meritless claim under 42 U.S.C. § 1981. This provision, however, does not apply to federal officials like Defendant here. *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *see also Farag v. United States*, 587 F. Supp. 2d 436, 471 (E.D.N.Y. 2008) (granting defendant's motion for summary judgment with respect to plaintiffs' Section 1981 claims where defendants were acting under the color of federal law, not state law). As such, Defendant's motion for summary judgment on the claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 67 and close the case.

Dated:  September 29, 2025
          New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge